## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SECRETARY OF LABOR, ) | |
| UNITED STATES DEPARTMENT OF ) | |
| LABOR, ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| CHARLES DALTON, ) | Case No. 07-CV-77-TCK-FHM |
| ) | |
|        **Intevenor,** ) | |
| ) | |
| v. ) | |
| ) | |
| COPART, INC., ) | |
| ) | |
|        **Defendant.** ) | |

## OPINION AND ORDER

Before the Court is Plaintiff Secretary of Labor, United States Department of Labor's ("DOL") Motion for Summary Judgment (Doc. 42).

### I.   Background

Intervenor Charles Dalton ("Dalton") worked as a salvage hauler for Defendant Copart Inc. ("Copart") at its Tulsa, Oklahoma facility. On March 4, 1999, Copart fired Dalton. Dalton thereafter filed a complaint with the Occupational Safety and Health Administration ("OSHA"), alleging that Copart fired him because he refused to drive an unsafe truck, in violation of the Surface Transportation Assistance Act ("STAA"). OSHA investigated Dalton's complaint and dismissed it as meritless. Dalton requested a hearing, which was held before an Administrative Law Judge ("ALJ") on May 10, 2000. The ALJ concluded that Copart violated STAA when it fired Dalton and made certain findings regarding Dalton's damages. On July 19, 2001, the Administrative Review Board ("ARB") reversed the ALJ's decision, and Dalton appealed the ARB decision to the Tenth

Circuit. On February 19, 2003, the Tenth Circuit reversed the ARB and remanded for further proceedings. *See Dalton v. United States Dep't of Labor*, No. 01-9535, 2003 WL 356780 (10th Cir. Feb. 19, 2003).

After the case was remanded to the ALJ, the parties moved to reopen the record to submit additional evidence. Specifically, Copart requested permission to submit evidence demonstrating that, because it no longer owned trucks or employed truck drivers except at its Detroit, Michigan facility ("Detroit facility"), it could not rehire Dalton. In a July 1, 2004 recommended order, the ALJ denied Copart's request, finding that because Dalton had submitted contradictory evidence regarding the existence of Copart's trucking business, Copart had failed to show why the record should be reopened. (*See* Recommended Order, Ex. 6 to Pl.'s Mot. for Summ. J., at 3.) The ALJ further restated his findings with regards to Copart's violation of the STAA and Dalton's resulting damages. On July 16, 2004, Copart sent a letter to Dalton, offering to reinstate him as a truck driver in its Detroit facility ("July 16, 2004 Letter"). The July 16, 2004 Letter stated that Copart would not pay relocation costs and further informed Dalton that Copart would be ceasing trucking operations at the Detroit facility at the end of July 2004. Dalton did not return to work at Copart. On July 29 and July 30, 2004, Copart terminated all of the truck drivers at the Detroit facility.

The ARB thereafter issued a Final Decision and Order ("FDO") on June 30, 2005, affirming the ALJ's recommended order and directing Copart to:

1. Reinstate Dalton to his previous position as driver, with the same pay schedule, health, welfare, and pension benefits as of the date of termination;

2. Pay Dalton back pay in the amount of $531 per week beginning at the date of termination, March 4, 1999, until the date of reinstatement, or the date of a bona fide offer of reinstatement if Dalton declined reinstatement;

       3.       Pay Dalton interest on the back pay beginning on March 4, 1999, using the federal underpayment rate[1] and compounded quarterly; and

       4.       Pay Dalton $22,339.17 in attorney's fees.

(FDO, Ex. 1 to Pl.'s Mot. for Summ. J., at 8.)[2] Copart subsequently paid Dalton the attorney's fees as ordered by the ARB but has not paid any back pay to Dalton. DOL therefore brought this action pursuant to 49 U.S.C. § 31105,[3] seeking civil enforcement of the FDO.

Now before the Court is DOL's motion for summary judgment on its enforcement claim, wherein DOL seeks an order requiring Copart to pay Dalton $241,570.32 in back pay and interest pursuant to the FDO. All parties are in agreement that Copart owes Dalton back pay and interest but dispute the precise amount owed to Dalton.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all

---

[1] The FDO states that the applicable interest rate is "the rate for the underpayment of federal income taxes, which consists of the federal short term rate determined under 26 U.S.C.A. § 6621(b)(3) plus three percentage points." (FDO, Ex. 1 to Pl.'s Mot. for Summ. J., at 7.) In the conclusion of the FDO, however, the ARB described the applicable interest rate as the "federal short term rate specified at 26 U.S.C.A. § 6621 and compounded quarterly." (*Id.* at 8.) The Court agrees with DOL that, given the earlier discussion regarding the federal underpayment rate, the reference to the "federal short term rate" in the conclusion section of the FDO was in error.

[2] The FDO makes no mention of the offer to reinstate Dalton at Copart's Detroit facility, as it dealt only with review of the ALJ's recommended order, which was issued prior to such offer.

[3] Section 31105(e) provides: "If a person fails to comply with an order issued under subsection (b) of this section, the Secretary of Labor shall bring a civil action to enforce the order in the district court of the United States for the judicial district in which the violation occurred."

factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.    Discussion**

In computing the amount owed to Dalton, the Court must consider: (1) Dalton's weekly rate; (2) the date that back pay began to accrue; (3) the date that back pay ceased to accrue; and (4) the applicable interest rate. The parties agree that Dalton's weekly rate is $531.00 and that back pay began to accrue on March 4, 1999. The parties dispute, however, the date the back pay ceased to accrue and the calculation of the applicable interest rate.[4] Specifically, DOL maintains that back pay ceased to accrue on July 31, 2004, the day after Copart terminated its last driver, resulting in a total amount of $241,570.32 in back pay and interest. Copart, on the other hand, argues that back pay ceased to accrue on July 16, 2004, the date of Copart's offer of reinstatement. Finally, Dalton argues that his back pay continues to accrue to the present day because Copart has not met the conditions required by the FDO.

---

[4] As noted previously, the parties do not dispute the precise interest rate to apply. *See supra* n.1. Rather, because the parties use different "end dates" for the payment of back pay, their calculations differ as to the total amount of interest due.

### A. July 16, 2004

In arguing for use of July 16, 2004 as the end date for the accrual of back pay, Copart contends that the July 16, 2004 Letter constitutes a "bona fide offer of reinstatement" sufficient to meet Copart's obligations under the FDO. (*See* FDO, Ex. 1 to Pl.'s Mot. for Summ. J., at 8 (ordering Copart to "[p]ay Dalton back pay . . . until the date of reinstatement, or the date of a bona fide offer of reinstatement if Dalton declined reinstatement")); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 238-29 (1982) (holding an employer can toll further accrual of back pay liability by making an unconditional offer of reinstatement). Dalton argues that the offer of reinstatement was not "bona fide," however, because it required him to relocate to Detroit at his own expense for a mere two weeks of work.

In assessing whether Copart's offer of reinstatement was sufficient to end the accrual of back pay liability, the issue is whether an objective, reasonable person would have rejected the offer of reinstatement. *See, e.g., Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004) ("[A] plaintiff's unreasonable rejection of an unconditional offer of reinstatement will cut off an employer's liability for damages . . . ."); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir. 1982) ("If a plaintiff's rejection of an offer of reinstatement is reasonable, then the offer does not terminate the accrual of damages."); *Saladin v. Turner*, 936 F. Supp. 1571, 1582 (N.D. Okla. 1996) (Kern J.) ("Courts have held the proper test of whether a plaintiff is justified in rejecting an offer of reinstatement is an objective one, examining whether a reasonable person in the claimant's position would decline the offer."). "Reasonableness of the rejection must be examined in light of the circumstances surrounding the offer and refusal." *Albert*, 356 F.3d at 1258. Given the precise nature of the offer extended to Dalton – namely, an offer of two weeks of employment

5

at the Detroit facility – and the fact that Dalton would have had to undergo personal expense to relocate to Detroit, the Court finds that a reasonable person would have rejected this offer of reinstatement. *See Saladin*, 936 F. Supp at 1582 (noting special circumstances, including "having to move a great distance to find a replacement job[,] may make it justifiable for claimant to refuse a bona fide offer [of reinstatement]") (citing *Ford Motor Co.*, 458 U.S. at 238 n. 27). The Court is therefore unwilling to use July 16, 2004 as the end date for the accrual of back pay.

### B.     July 31, 2004

The Tenth Circuit has stated that "[i]t is improper . . . to award back pay if it can be shown that the employees would have lost their jobs at a later date even if they had been treated fairly." *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463, 1473 (10th Cir. 1993); *see N.L.R.B. v. Master Slack and/or Master Trousers Corp.*, 773 F.2d 77, 83 (6th Cir. 1985) ("It is improper . . . to award back pay if an employer can show that even if employees had been treated with total fairness they would have been discharged at a later date."). This rule of law is grounded in the fact that the purpose of a back pay award is "to make the employee whole – *i.e.*, restore the economic status quo that would have obtained but for the wrongdoing on the part of the employer[.]" *Aguinaga*, 993 F.2d at 1473. DOL therefore argues that Copart's back pay obligation ceased when it terminated the last truck drivers from employment at the Detroit facility on July 30, 2004.

The Court agrees with DOL's position. The record reflects that in October 2003, Copart "made a strategic decision to exit the trucking business and to [instead] retain independent subhaulers," and that in accordance with this decision, Copart terminated all of its truck drivers by July 30, 2004. (Form 10-K, Ex. 2 to Pl.'s Mot. for Summ. J., at 2; *see* Terminated Employees, Ex.

3 to Pl.'s Mot. for Summ. J.; July 14, 2006 Letter, Ex. 4 to Pl.'s Mot. for Summ. J.)  Accordingly, even had Copart never violated the STAA by terminating Dalton in 1999, the record reflects that Dalton would have lost his job with Copart at some point before July 31, 2004.[5]  In accordance with the rule of law outlined in *Aguinaga*, it is therefore improper to award Dalton wages for the time period after July 30, 2004.  To do so would contravene the purpose of back pay by placing Dalton (1) in a better position than he would have been in had Copart not engaged in wrongful conduct, and (2) in a better position than all of the other truck drivers employed by Copart.  The Court therefore agrees with DOL's contention that back pay ceased to accrue on July 31, 2004, the day after Copart terminated its last driver.  *See Bartek v. Urban Redev. Auth. of Pittsburgh*, 882 F.2d 739, 746-47 (3d Cir. 1989) (finding district court did not err in refusing to give back pay after date employee's position was eliminated).

---

[5] Dalton urges the Court not to consider evidence regarding the termination of Copart's trucking business, arguing that: (1) to do so "[r]equire[s] [the] Court to compromise itself by exceeding its instant authority" because such evidence was not included in the FDO (*see* Intervenor's Resp. to Pl.'s Mot. for Summ. J. 4-5); and (2) the FDO's reference to contradictory evidence presented by Dalton mandates that such evidence is "disputed" (*see id.* 1-2, 4; FDO, Ex. 1 to Pl.'s Mot. for Summ. J., at 7 (finding ALJ did not err in refusing to reopen the record to allow Copart to introduce evidence that it was exiting the truck business because "the fact that [Copart] still operates in Detroit undercuts Copart's purported new evidence that it cannot reinstate Dalton because it no longer employs truck drivers")).

The Court rejects Dalton's position.  First, Dalton fails to offer any legal support for the contention that the Court is exceeding its authority in accepting evidence that Copart has ceased all trucking operations.  Second, although Dalton presented evidence before the ALJ and ARB concerning trucking operations in Copart's Detroit facility, the evidence currently before the Court demonstrates that Copart no longer employs truck drivers at said facility.  Indeed, Dalton has provided no evidence to the Court disputing this fact or in any way indicating that Copart maintains a trucking business.  Therefore, although evidence concerning the termination of Copart's trucking operations might have been disputed at the time the FDO was issued, such is not the case now.

The Court has reviewed the calculations of back pay and interest attached to DOL's Motion for Summary Judgment and finds such calculations proper. Based on such calculations, the Court finds that Copart owes $241,570.32 in back pay and interest to Dalton. (*See* Back Wage Computation, Ex. 5 to Pl.'s Mot. for Summ. J.)

## IV. Conclusion

For the reasons stated herein, DOL's Motion for Summary Judgment (Doc. 42) is GRANTED, and Copart is hereby ordered to pay Dalton $241,570.32 in back pay and interest. A separate Judgment will be entered.

**IT IS SO ORDERED this 13th day of September, 2010.**

*[signature: Terence C. Kern]*

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**